AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
RICHARD W. NAGEL
CLERK OF COURT
2020 JAN 27 PM 1:58
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIST., OHIO
DAYTON

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 3 : 20 mj 0049
THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER )
937-815-9619 THAT IS IN THE CUSTODY OR CONTROL )
OF T-MOBILE )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A. This court has authority to issue this warrant under 18 U.S.C. sections 2703(c)(1)(A) and 2711(3) (A) and Federal Rule of Criminal Procedure 41.

located in the _____unknown_____ District of _____unknown_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Conspiracy to possess with intent to distribute a controlled substance |
| 21 U.S.C., § 843 | Use of a communications facility to commit a felony |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA RYAN FERGOT, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **1-27-20**

_____
*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **937-815-9619** THAT IS IN THE CUSTODY OR CONTROL OF T-MOBILE | Case No. _____ <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Ryan Fergot, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the

location of the cellular telephone assigned call number **937-815-9619**, (the "**Target Cell**

**Phone**"), whose service provider is T-Mobile, a wireless telephone service provider

headquartered at Parsippany, NJ.  A subpoena was issued to T-Mobile for subscriber information

which showed that the phone is registered in the name Mary Neloms of 3112 Benchwood Road,

Dayton Ohio. The **Target Cell Phone** is described herein and in Attachment A, and the location

information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including

cell-site location information, that may fall within the statutory definitions of information

collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the

requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-

3127.  The requested warrant therefore includes all the information required to be included in an

order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.    I am a Special Agent with the United States Drug Enforcement Administration (DEA), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878. The information contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in this investigation. I have been employed as a Special Agent with the DEA since September 2018. In September 2018, I attended the DEA Academy which consisted of 17 weeks of training in conducting federal drug trafficking investigations; handling confidential sources; conducting undercover operations; conducting mobile, static, foot and electronic surveillance; conducting tactical entry and vehicle arrest operations; using defensive tactics and firearms; as well as additional aspects of conducting DEA lead investigations. I have been assigned to the DEA Dayton Resident Office since April 2019. Prior to employment with the DEA, I was a sworn Law Enforcement Officer of the State of Wisconsin who was charged with the duty to investigate criminal activity and enforce the criminal laws of the State of Wisconsin, and employed by the City of Appleton Police Department from August 2014 to September 2018. During my employment with the Appleton Police Department, I was assigned to the Department's patrol division. During my time as a patrol officer, I conducted retail level drug investigations and I assisted the Appleton Police Department's Community Resource Unit (CRU) which included Narcotics Investigations, Prostitution and Pimping, Human Trafficking, and Criminal Street Gangs.

4.    Since the time of my assignment with the DEA, and during time spent as an Appleton Police Officer, I have been involved in narcotics-related arrests, executed search warrants that resulted in the seizure of narcotics, and participated in undercover narcotics purchases.    Through training and experience, I am familiar with the manner in which persons

2

involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived.

5.     Through training and experience, I am aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hardline telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter nor all the facts known to investigators.

7.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 841 and 846 (distribution of a controlled substance and conspiracy to commit the same); and Title 21 U.S.C. § 843 (use of a communications facility to commit a felony) have been committed, are being committed, and will be committed by Antoine BROWN utilizing the **Target Cell Phone**.

8.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     I submit, based on the facts below, that there is probable cause to believe that the **Target Cell Phone**, as described above, is being utilized by Antoine BROWN, who is a member

3

of a drug trafficking organization (DTO). During the investigation members of the DEA Dayton Resident Office (DRO) have utilized a Confidential Source (hereinafter CS)[1] to conduct recorded calls with Antoine BROWN.

10.    On January 22, 2020, the CS placed an outgoing call to Antoine BROWN using 937-815-9619 (**Target Cell Phone**) which was monitored and recorded by members of the DRO:

> **BROWN:** Hello
>
> **CS:** Yo what up boy?
>
> **BROWN:** What up with it?
>
> **CS:** Hey whats up? Hey I changed my number bro I just calling you about my number and shit, I just changed it.
>
> **BROWN:** Oh ok I'm going to go ahead and lock you in.
>
> **CS:** yea yea, hey what I was gonna tell you umm, I remember you was uh, I got some people trying to get like uhh like two ounces of that meth and shit.  I remember you told me the other day how much that, you want for that shit? Yea how much an ounce of meth though?
>
> ........
>
> **BROWN:** yea, you talking about that on the ice cream side right?
>
> **CS:** yea yea the ice cream side. Hey but look I'm trying to make me a few dollars that's why I'm saying like what would be a good PR for you, know what I'm sayin so I can make me a few dollars.
>
> **BROWN:** Shit nigga I want 250 for mine and it's clean.
>
> **CS:** 250? Alright 250 for a O?

---

[1] This CS has previously been arrested for minor offenses.  The CS is currently working with law enforcement authorities for monetary consideration. The information provided by the CS has been corroborated by law enforcement through the use of recorded phone calls.

**BROWN:** yea

**CS:** yea alright, Imma talk to my people and shit cuz they, they be getting that and that fentanyl and shit so I was like man I know the nigga that uh, I know the nigga that got the meth and shit but I don't know about the… I don't know if you fuck with the fetty and all that other shit.

**BROWN:** yea, hell yea I got that too

**CS:** yea? Yea man how much you want for that OZ of that fetty

**BROWN:** a whole zip? Shit….. uh 21

**CS:** 21? You can't do 2?

**BROWN:** yea I can do 2, for you

**CS:** you can do 2? Alright Imma talk to my people, yea so I can make me a few dollars, you know how it is.

**BROWN:** alright shit get with me

……..

11.     Based on my training, experience, knowledge of the case, coded language commonly used in drug trafficking conversations, as well as discussions with the CS, I believe that BROWN agreed to sell CS ounce quantities of methamphetamine for $250.00 each, noting that it is "clean" and ounce quantities of fentanyl for $2,000.00. My training and experience leads me to understand that when BROWN calls his meth "clean," he is referring to the quality and purity of the methamphetamine. CS explained to BROWN that CS was attempting to middle a deal between unknown buyers and BROWN, allowing CS to make money by simply connecting the two parties on the purchase of ounce quantities of methamphetamine and fentanyl.

5

12. In summary, I believe the **Target Cell Phone** is currently being used by Antoine BROWN in the distribution of drugs.

13. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

14. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available.

15. Based on my training and experience, I know that T-Mobile can collect cell-site data about the **Target Cell Phone**. Based on my training and experience, I know that for each

6

communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## **AUTHORIZATION REQUEST**

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

7

18.    I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

19.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

Respectfully submitted,

Ryan Fergot
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on January 27, 2020.

HON. SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **937-815-9619**, **(**the "**Target Cell Phone**"), whose wireless service provider is T-Mobile, a wireless telephone service provider headquartered Parsippany, NJ.

2. Records and information associated with the **Target Cell Phone** that is within the possession, custody, or control of T-Mobile including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## **ATTACHMENT B**

### **Particular Things to be Seized**

#### **I. Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §§ 841 and 846 (distribution of a controlled substance and conspiracy to commit the same); and Title 21 U.S.C. § 843 (use of a communications facility to commit a felony).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.